# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| C.H. ROBINSON WORLDWIDE, INC., | Civil No. 13-1274 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS** |
| U.S. SAND, LLC; JOSE ALBERTO GONZALEZ; and MERVIN PACKINEAU, | |
| Defendants. | |

Paul A. Sand and Shawn M. Raiter, **LARSON KING, LLP**, 30 East Seventh Street, Suite 2800, St. Paul, MN  55101, for plaintiff.

Danielle Fitzsimmons, David A. Schooler, and Ellen A. Brinkman, **BRIGGS & MORGAN, PA**, 80 South Eighth Street, Suite 2200, Minneapolis, MN  55402, for defendants.

This case arises from two contracts between plaintiff C.H. Robinson ("CHR") and defendant U.S. Sand, in which CHR agreed to transport materials for U.S. Sand.  CHR alleges that it performed its duties under the contract but that U.S. Sand has failed to pay.  CHR brings this action for breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, and quantum meruit against U.S. Sand and two of its officers, Jose Gonzalez and Mervin Packineau (collectively, "Sand").  Sand moves to dismiss each count in the complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court will deny Sand's motion to dismiss with regard to all of CHR's claims except for the claim for breach of the duty

of good faith and fair dealing, which the Court will dismiss without prejudice.  CHR's claim for breach of the duty of good faith and fair dealing lacks factual allegations, and fails to allege either bad faith or unjustifiable hinderance.

## BACKGROUND

### I.    THE PARTIES

CHR is a corporation headquartered in Minnesota that provides third-party logistics, such as freight contracting and transportation.  (Am. Compl. ¶¶ 1, 13 ("Compl."), June 3, 2013, Docket No. 6.)[1]  Sand is a corporation headquartered in Texas. (*Id.* ¶ 2.)  Defendant Gonzalez, a resident of Texas, holds himself out as the Managing Member and CEO of Sand and defendant Packineau, a resident of North Dakota, holds himself out as an owner of Sand.  (*Id.* ¶¶ 3-6.)  The Court has jurisdiction under 28 U.S.C. § 1332(a).

### II.    THE AGREEMENTS

CHR alleges that, in 2012, representatives of Sand and CHR began discussing an arrangement under which CHR would transport products for Sand.  (*Id.* ¶¶ 16-18.)  CHR and Sand (with Gonzalez acting on behalf of Sand), executed two Agency Agreements ("Agreements") on October 24, 2012.  (*Id.* ¶¶ 19, 27.)  Under the first Agreement, CHR agreed to arrange for the shipping and transporting of 5,500 tons of ceramic proppant

---

[1] CHR amended its complaint to properly allege subject matter jurisdiction in response to an Order from United States Magistrate Judge Franklin Noel. (*See* Order, May 30, 2013, Docket No. 5.)  All references to the complaint are to the Amended Complaint. (*See* Amended Complaint, June 3, 2013, Docket No. 6.)

from China to Hebron, North Dakota, to be used by Sand's customer Halliburton in the Bakken oil field in North Dakota.  (*Id*. ¶¶ 16, 19, 24.)  The Agreement obligates Sand to pay CHR $180.91 per metric ton for the freight – both ocean and rail – costs of transporting the proppant and to pay for other applicable charges, such as storage, duties, and taxes.  (*Id*. ¶ 20.)  According to CHR, the Agreement obligates Sand to pay CHR the amount due for the transportation "Net 60 days" upon the date of the invoice.  (*Id*. ¶ 23.)  The full text of the payment term in the Agreement states:

> **<u>Payment Terms:</u>**
>
> Net 60 days upon issue date of invoice (upon signing). Interest on overdue amounts will be charged at 1% per month.
>
> - 1 invoice for freight from at total volume shipped (min 5,500MT)
> - Separate invoice(s) for private railcars (monthly lease & positioning charge)
>
> Required is the implementation of an Escrow Account where Halliburton deposits funds and CHR can draw against its share as per this agreement.

(Aff. of Jose Gonzalez, Ex. A at 4, July 1, 2013, Docket No. 16.)[2]

---

[2] CHR did not attach copies of the Agreements to its complaint, but Sand included copies of the Agreements as attachments to its motion to dismiss.  Sand also attached the relevant terms of the National Customs Brokers and Forwarders Association of America ("NCBFAA") which are incorporated into the Agreements.  (Gonzalez Aff., Ex. C.)  In response, CHR attached two affidavits and several exhibits to its opposition to the motion to dismiss.  (See Aff. of Shawn M. Raiter, July 22, 2013, Docket No. 18; Aff. of Mark E. Petersen, July 22, 2013, Docket No. 19.) These exhibits contain pieces of evidence that were not referenced or discussed in the Complaint.

CHR argues that, because Sand attached additional documents to its motion to dismiss, the motion to dismiss should be converted into one for summary judgment.  *See* Fed. R. Civ. P. 12(d).   The Court concludes that the Agreements and NCBFAA text attached to Sand's motion are "necessarily embraced by the pleadings" and may be considered without converting the motion to one for summary judgment.  *See Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).  The Agreements are the contracts in dispute in this case and the NCBFAA terms are incorporated into those Agreements, so the Court may properly consider these materials at this stage.  *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("In a case

(Footnote continued on next page.)

CHR alleges that, as required under the first Agreement, it "arranged and paid for the ocean shipment of the 5,500 metric tons of ceramic proppant from China to Olympia, Washington" and "arranged and paid for the rail transportation of approximately 3,000 metric tons of the ceramic proppant from Olympia, Washington to several locations in North Dakota as requested by U.S. Sand and its customer, Halliburton Energy Services." (Compl. ¶ 24.)  Halliburton accepted the shipments and paid Sand more than $2 million, but Sand "has refused to pay C.H. Robinson anything it owes" under the Agreement.  (*Id.* ¶ 25.)  CHR claims that Sand has not paid it for the cost of shipping of 5,500 tons from China to Washington, transporting 3,000 tons from Washington to North Dakota by rail, and storing 2,500 tons in Washington.  (*Id.* ¶¶ 25-26.)

Under the second Agreement, CHR agreed to transport 1,000 metric tons of silica sand from Marshfield, Wisconsin to Williston, North Dakota.  (*Id.* ¶ 27.)  The second Agreement contains similar payment terms to the first Agreement: a dollar amount (here, $62) per metric ton for freight costs, duties and taxes, and other costs such as storage, and the same payment term stating that payment is due "Net 60 days" upon date of invoice. (*Id.* ¶¶ 28, 31.)

--------

(Footnote continued.)

involving a contract, the court may examine the contract documents in deciding a motion to dismiss.").  However, the documents attached to CHR's motion, which are primarily pieces of correspondence between CHR and Sand and their attorneys, are not referenced in the complaint, nor are the facts they demonstrate pleaded in the complaint.  They cannot be said to be "necessarily embraced by the pleadings," and the Court will not consider them at this stage.  *Cf. Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 800 (8th Cir. 2011) (abuse of discretion for district court, in granting motion to dismiss, to have considered information beyond the pleadings, including information "contained in Brooks's letters to counsel, Neely's letter to Representative Clay, correspondences from Swimmer, and Brooks's own affidavit").

Pursuant to the second Agreement, CHR alleges that it arranged for and paid for the shipment of the 1,000 tons of sand from Wisconsin to North Dakota, but Halliburton rejected the shipments because they did not meet Halliburton's specifications.  (*Id.* ¶¶ 32-33.)  As with the first Agreement, CHR claims that Sand has refused to pay CHR for the shipment costs it owes to CHR under the Agreement, which CHR alleges amounts to over $1 million between the two agreements.  (*Id.* ¶¶ 33-34.)   Both Agreements incorporate the terms and conditions of the National Customs Brokers and Forwarders Association of America ("NCBFAA").  (*Id.* ¶¶ 21, 29.)

With regard to the individual defendants, CHR alleges that defendants Gonzalez and Packineau "used U.S. Sand's corporate entity as a mere shell to secure valuable services from C.H. Robinson and then diverted the proceeds from those services to their own personal use," and "exercised such control over U.S. Sand such that it was their alter ego." (*Id.*  ¶¶ 36-37.)

## III.    PROCEDURAL HISTORY

CHR's complaint alleges four counts against all defendants: Breach of Contract (Count I), Breach of Duty of Good Faith and Fair Dealing (Count II), Unjust Enrichment/Quantum Meruit (Count III), and Declaratory Judgment (Count IV).  (*Id.* at 7-9.)  CHR seeks a declaratory judgment of its rights under the Agreements, including that the NCBFAA terms incorporated by the Agreements permit CHR to sell the proppant it is currently storing in Washington.

## DISCUSSION

## I.   STANDARD OF REVIEW

A complaint that is being challenged on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) does not need to contain detailed factual allegations to survive the motion, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   A complaint must contain sufficient facts to state a claim that is not merely conceivable, but rather, is plausible. *Twombly*, 550 U.S. at 570.   When reviewing a motion to dismiss, the claim must be liberally construed, assuming the facts alleged therein to be true and drawing all reasonable inferences from those facts in the plaintiff's favor. *Id.* at 553-56.   Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. *Ossman v. Diana Corp.*, 825 F. Supp. 870, 880 (D. Minn. 1993).

Sand moves to dismiss CHR's complaint.[3]   The parties do not presently dispute that Minnesota law applies, so the Court will apply Minnesota law.[4]

---

[3] Since Sand filed this motion, CHR has filed a motion to amend its First Amended Complaint.   (Motion to Amend the First Amended Complaint, Sept. 19, 2013, Docket No. 31.) Its proposed Second Amended Complaint includes substantially greater detail on many of the claims that Sand argues fail to state a claim as written in the First Amended Complaint.   As noted in this Order, many of the factual allegations in the First Amended Complaint are sufficient.   The Court takes no position on the motion to amend pending before United States Magistrate Judge Franklin L. Noel.

[4] Sand states that it relies on Minnesota law "for the purposes of this motion but preserve[s] and do[es] not waive any arguments regarding the potential applicability of other

(Footnote continued on next page.)

## II.     Breach of Contract

Under Minnesota law, the basic elements of a breach of contract claim are "(1) the formation of a contract, (2) the performance of conditions precedent by the plaintiff, and (3) the breach of the contract by the defendant." *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008) (citing *Briggs Transp. Co. v. Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1974)).   Sand argues that CHR's breach of contract count fails to state a claim for two reasons: (1) CHR failed to adequately plead that it performed a specific condition precedent to the contract – the implementation of an escrow account, and (2) the plain terms of the contract do not require Sand to pay CHR.

### A.     Condition Precedent

A condition precedent is "any fact or event, subsequent to the making of a contract, which must exist or occur before a duty of immediate performance arises under the contract." *Nat'l City Bank of Minneapolis v. St. Paul Fire & Marine Ins. Co.*, 447 N.W.2d 171, 176 (Minn. 1989).   Sand argues that the payment term in the Agreements makes the implementation of an escrow account a condition precedent to the contract, and that CHR's breach of contract claim must fail because CHR does not plead that an

---

(Footnote continued.)

laws in this litigation."   (Mem. in Supp. of Mot. to Dismiss at 6 n.3, July 1, 2013, Docket No. 14.)

escrow account was established.   CHR argues that the implementation of an escrow account is not a condition precedent to payment under the Agreements.

> The relevant terms in the Agreements include:
>
> Net 60 days upon issue date of invoice (upon signing). Interest on overdue amounts will be charged at 1% per month. . . .
>
> Required is the implementation of an Escrow Account where Halliburton deposits funds and CHR can draw against its share as per this agreement.

(Gonzalez Aff., Ex. A at 4.)

This language does not unambiguously make the implementation of an escrow account a condition precedent to payment.   The phrasing and language surrounding the escrow account provision are susceptible to multiple meanings: the phrase "[r]equired is the implementation" is ambiguous with regard to whom is responsible for implementing the escrow account and what it is required for.   The implementation of an escrow account could be required for invoicing or merely payment, and could be the responsibility of CHR, Sand, or some other third party – the Agreements are not clear.

Because it is not clear under the terms of the Agreements **whether** the implementation of an escrow account is a condition precedent to CHR receiving payment, the Court cannot conclude that CHR's breach of contract pleadings fail.   Where contract language is ambiguous, "its interpretation [is] a question of fact for the jury and the district court should not grant a motion to dismiss."   *Olympus Ins. Co. v. AON Benfield, Inc.*, 711 F.3d 894, 898 (8th Cir. 2013) (citing *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003)).   "A contract is ambiguous if, based upon its

language alone, it is reasonably susceptible of more than one interpretation." *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997).

Thus, the Court concludes that the phrase in the Agreements, "Required is the implementation of an Escrow Account," is susceptible to more than one meaning and does not unambiguously render the escrow account a condition precedent to payment.[5] The Court will deny Sand's motion to dismiss the breach of contract claim on this ground. *Cf. Praktika Design & Projectos Ltd. v. Marvin Lumber & Cedar Co.*, Civ. No. 06-957, 2006 WL 2788182, at *4 (D. Minn. Sept. 26, 2006) ("The Court concludes that the contract is susceptible to more than one interpretation, and that extrinsic evidence must be considered to resolve the ambiguity. As such, the Court cannot grant defendants' motion to dismiss the breach of contract claim.").[6]

## B.     Requirement of Payment Under the Agreements

Sand also argues that CHR fails to state a claim for breach of contract because the Agreements do not "obligate U.S. Sand to make payments directly to CHR," so CHR's

---

[5] The Court's analysis on this question should not be taken to imply that a party to a contract with unambiguous conditions precedent must specifically plead the existence or performance of those conditions. Rather, under Federal Rule of Civil Procedure 9(c), "it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). The Court concludes that it need not assess the adequacy of the pleadings with regard to any potential conditions precedent here because it is not clear from the Agreements whether the implementation of an escrow account is a condition precedent at all.

[6] CHR argues in the alternative that, if the escrow account is a condition precedent to the contract, CHR waived that condition by permitting Sand to pay CHR directly rather than through an escrow account. The Court need not reach this issue because it concludes that the Agreements do not unambiguously render the implement of an escrow account to be a condition precedent. Furthermore, CHR's arguments on this point rely on facts outside of the pleadings that the Court has declined to consider for the purposes of this motion. This issue is best left for further stages of this litigation.

claims that Sand failed to pay do not allege a breach of any provision of the contract. (See Mem. in Supp. of Mot. to Dismiss at 9.)  As with the question of whether the escrow account is a condition precedent, this argument raises a question of interpretation of the Agreements, which is a question typically not resolved at the motion to dismiss stage. Thus, the Court will grant the motion to dismiss on this ground only if the relevant portions of the Agreements unambiguously do not require Sand to pay CHR.  *See Praktika Design & Projectos Ltd.*, 2006 WL 2788182, at *4.   In contrast, if the Agreement terms could be interpreted in CHR's favor, then CHR has adequately stated a claim for breach of contract.

The Court concludes that the terms in question do not unambiguously preclude a finding of breach by Sand.  The terms of the Agreements require, at a minimum, that payment be received "Net 60 days upon issue date of invoice (upon signing)."  (Gonzalez Aff., Ex. B.)  At least one plausible interpretation of this term is that Sand is required to ensure that CHR receives payment within 60 days of CHR sending an invoice.  Certainly, the contract language does not unambiguously excuse Sand from payment, so the Court will not grant its motion to dismiss on this ground.

The Court is satisfied that CHR has pled the basic elements required for a breach of contract claim: the existence of the Agreements, that Sand breached the Agreements by not paying CHR for performance, and that CHR performed all that was required of it under the Agreements.  The Court will therefore deny Sand's motion to dismiss CHR's breach of contract claim.

## III.     Breach of the Duty of Good Faith and Fair Dealing

CHR also brings a claim against Sand for a breach of the duty of good faith and fair dealing, claiming that Sand acted in bad faith by refusing to pay CHR pursuant to the agreements.  Sand argues these allegations fail to state a claim.  As an initial matter, the parties dispute what is required under Minnesota law to state such a claim.  Sand argues that a breach of the duty of good faith and fair dealing claim requires an allegation that the party "unjustifiably hindered" the other party's performance of its duties under the contract, while CHR argues that Minnesota law requires only an allegation of bad faith. The Court need not resolve this unsettled question at this time.[7]  Even if the Court determined that this claim need only allege bad faith and not unjustifiable hindrance, CHR fails to allege facts supporting a plausible inference that Sand acted in bad faith or had an ulterior motive for its alleged nonpayment.

The relevant portion of the complaint that addresses the duty of good faith and fair dealing states: "By refusing to pay CH Robinson the amounts due and owing under the

---

[7] Whether this claim requires an allegation of unjustifiable hindrance under Minnesota law appears to be an open question.  The Minnesota Supreme Court recognized an implied covenant of good faith and fair dealing in non-UCC contracts in *In re Hennepin County 1986 Recycling Bond Litigation*, where it held: "Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract."   540 N.W.2d 494, 502 (Minn. 1995) (quoting *Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984)) (citing *Haase v. Stokely–Van Camp, Inc.*, 99 N.W.2d 898, 902 (Minn. 1959); Restatement (Second) of Contracts § 205 (1981)).  The Restatement cited by the court in *Hennepin County* suggests several possibilities of what could constitute bad faith in performance, only one of which is interference with the other party's performance.  *See* Restatement (Second) of Contracts § 205 (1981).  It is not clear from the court's opinion in *Hennepin County* whether Minnesota law recognizes a duty of good faith and fair dealing only where one party adequately alleges that the other party unjustifiably hindered its performance, or in any of the circumstances contemplated by the Restatement.

- 11 -

agreements referenced herein, Defendants breached their duties of good faith and fair dealing with CH Robinson." (Compl. ¶ 46.) This states the legal claim, but not any specific facts, which is not enough to state a claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The only factual basis the complaint alleges for a breach of the duty of good faith and fair dealing is that Sand refused to pay. There is no allegation that Sand had an ulterior motive for not paying or that Sand honestly believed it was legally required to pay but chose not to.[8] *See Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121,125 (Minn. Ct. App. 1998) ("'Bad faith' is defined as a party's refusal to fulfill some duty or contractual obligation based on an ulterior motive, not an honest mistake regarding one's rights or duties."); Minn. Stat. § 520.01, subd. 6 (Minnesota statute applying UCC: "A thing is done 'in good faith' when it is done honestly, whether it be done negligently or not.").

This is not to say that CHR **could not** present evidence or make allegations of bad faith – its attachments to its opposition motion might permit a plausible inference that Sand acted in bad faith by not making payments and using the lack of escrow account as an excuse for nonpayment despite having agreed to make payments directly to CHR until the escrow account was established. But the Court does not consider those pieces of

---

[8] Under Count III for Unjust Enrichment and Quantum Meruit, the complaint alleges that "Defendants' representations and assurances wrongly induced C.H. Robinson to incur substantial expenses with the expectation that Defendants would pay the agreed amounts." (Compl. ¶ 50.) It is possible that this allegation could be interpreted to support an inference of bad faith, but misrepresentations and assurances do not necessarily suggest an ulterior motive or bad faith. Moreover, this allegation is not specific – it does not point to any particular misrepresentations or assurances nor describe what they entailed.

evidence at this stage.  Instead, the Court will dismiss CHR's claim for a breach of the duty of good faith and fair dealing without prejudice.

## IV.   Unjust Enrichment and Quantum Meruit

Sand moves to dismiss CHR's unjust enrichment and quantum meruit claim, arguing that CHR fails to allege that Sand received a benefit unjustly.[9]  "Unjust enrichment is an equitable doctrine that allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable."  *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012).  Here the dispute is over whether Sand's retention of the alleged benefit of CHR's transportation services is "not legally justifiable."  Sand argues that under Minnesota law, unjust enrichment claims require allegations of unlawful or illegal activity, citing *First National Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981) ("unjust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean

_____

[9] Sand does not argue that CHR's unjust enrichment or quantum meruit claims would be barred because their relationship is governed by the Agreements.  Under Minnesota law, a claim for unjust enrichment "does not apply when there is an enforceable contract that is applicable." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012).  But at the motion to dismiss stage, courts "routinely permit the assertion of contract and quasi-contract claims together." *Cummins Law Office, P.A. v. Norman Graphic Printing Co.*, 826 F. Supp. 2d 1127, 1130 (D. Minn. 2011) (breach of contract claim did not preclude unjust enrichment claim at motion to dismiss stage where plaintiff-law firm alleged non-payment by defendant-client; ultimately dismissing unjust enrichment claim because statutory remedy was available); *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (plaintiffs "may plead their unjust-enrichment claim in the alternative to their breach-of-contract claim without fear of dismissal").  The Court will permit CHR to proceed with its quantum meruit and unjust enrichment claim as an alternative theory.

illegally or unlawfully."). But Minnesota courts of appeals interpreting *Ramier* have held that "unjustly" is not strictly limited to illegal or unlawful activity, and rather can include moral wrong. *See Mon-Ray, Inc. v. Granite Re, Inc.*, 677 N.W.2d 434, 440 (Minn. Ct. App. 2004) ("Unjust enrichment may be founded on failure of consideration, fraud, or mistake, or situations where it would be morally wrong for one party to enrich himself at the expense of another." (internal quotation marks omitted)); *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001) ("[T]he cause of action for unjust enrichment has been extended to also apply where, as here, the defendants' conduct in retaining the benefit is morally wrong."); *Park-Lake Car Wash, Inc. v. Springer*, 394 N.W.2d 505, 514 (Minn. Ct. App. 1986) ("Unjust enrichment need not be based on fraud or mistake; such a remedy may also be based on situations where it would be morally wrong for one party to enrich himself at the expense of another." (internal quotation marks omitted)); *see also Holman v. CPT Corp.*, 457 N.W.2d 740, 745 (Minn. Ct. App. 1990).

CHR alleges that "[i]t would be unjust to allow Defendants to retain the profits from their use of C.H. Robinson to transport and store the materials described herein without paying C.H. Robinson for its services." (Compl. ¶ 49.) This allegation – that Sand received profits from CHR's work that it did not have to pay for – suffices to state a claim for unjust enrichment. If Sand received a windfall from CHR's work but paid no remuneration for it (which was to CHR's detriment), that could be considered "unjust" or "morally wrong." *See Twin City Constr. Co. of Fargo, N.D. v. ITT Indus. Credit Co.*, 358 N.W.2d 716, 719 (Minn. Ct. App. 1984) (lender was unjustly enriched when it refused to

make final payment under a construction contract after contractor completed work); *Anderson v. DeLisle*, 352 N.W.2d 794, 796 (Minn. Ct. App. 1984) (jury reasonably found unjust enrichment where home buyer put $47,000 worth of improvements into home before finalizing contract for deed; sellers knew buyer could not fulfill contract and kept benefit of improvements).   The Court will therefore deny Sand's motion to dismiss on the unjust enrichment and quantum meruit claim.

## V.    Declaratory Judgment

CHR seeks declaratory judgment, asking the Court to declare under the terms of the first Agreement that "it may sell and/or dispose of the ceramic proppant it continues to store" in Washington and that it "may use any proceeds from such disposition to reimburse C.H. Robinsons for the monies owed by Defendants." (Compl. ¶ 57.)  It also generally seeks a "declaration about the rights and obligations of the parties" under the Agreements.  (*Id.* ¶ 58.)  It bases its right to sell or dispose of the proppant on terms of the NCBFAA that it alleges are incorporated into the Agreements.  CHR alleges that the "applicable NCBFAA terms and conditions included an agreement that C.H. Robinson has a general and continuing lien on the ceramic proppant C.H. Robinson continues to store" and that the NCBFAA terms "also included an agreement that C.H. Robinson has the right to sell the ceramic proppant and apply any proceeds from that sale to the amount Defendants owe to C.H. Robinson."  (*Id.* ¶¶ 55-56.)

Sand argues that these allegations fail to plead facts that CHR has fulfilled certain specific terms of the NCBFAA.  For example, the NCBFAA terms state that a company has a lien on any "property of Customer coming into Company's actual or constructive

possession or control." (Gonzalez Aff., Ex. C at 12.)  Sand argues that CHR failed to plead specifically that the proppant was the property of Sand.  Additionally, the NCBFAA terms state that the "Company shall provide written notice to Customer of its intent to exercise such lien," (*id.*), and Sand argues that CHR failed to plead specifically that it provided adequate notice to Sand as required by the NCBFAA terms.  Sand lists four other specific facts it argues CHR was required to plead in order to state a claim that it is entitled to declaratory judgment based on the terms of the NCBFAA.  (*See* Mem. in Supp. of Mot. to Dismiss at 14.)

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  Disputes over the meaning or enforceability of a contract present actual controversies that may be settled through a declaratory judgment. *See, e.g.*, *E.W. Blanch Co. v. Enan*, 124 F.3d 965, 968 (8th Cir. 1997); *see also Guidant Sales Corp. v. George*, Civ. No. 05-2890, 2006 WL 3307633, at *4 (D. Minn. Nov. 14, 2006).

The dispute here is fairly characterized as one over the "meaning or enforceability" of a contract.  The dispute centers on whether, under the incorporated terms of the NCBFAA, CHR has and may exercise a lien on the proppant it alleges it is storing in Washington.  This is an actual controversy about which the Court could declare the relevant rights and duties of the parties.  CHR pleads sufficient facts that permit a reasonable inference that it is entitled to the declaration it seeks.  CHR's allegations that

it "has a general and continuing lien" on the proppant and that it continues to store the proppant are not legal conclusions.   Rather, they are factual allegations that, if true, would likely entitle it to declaratory judgment that it may sell or dispose of the proppant. If, under the NCBFAA terms the proppant must be the property of Sand in order for CHR to have a lien, the Court can infer from CHR's allegation that such facts are encompassed in CHR's allegation that it has a lien.   CHR does not need to plead every single condition or requirement of the entire lien section of the NCBFAA terms in order to state a claim for declaratory judgment at this stage.   *Cf. Newberg v. Schweiss*, Civ. No. 08-4681, 2009 WL 3202380, at *3 (D. Minn. Sept. 30, 2009) ("A party, however, need not specify the precise terms of a promise in order to survive a motion to dismiss for failure to state a claim."); *Firstcom, Inc. v. Qwest Corp.*, Civ. No. 04-995, 2004 WL 1402564 (D. Minn. June 21, 2004) ("[A]rguments regarding specific UNE-P terms and any attendant purchase commitments are questions of fact that are not ripe for disposition on a motion to dismiss.").   The Court will therefore deny Sand's motion to dismiss the declaratory judgment cause of action.

## VI.   Individual Defendants

CHR seeks to hold defendants Gonzalez and Packineau individually liable for injuries which CHR alleges Sand has caused.   CHR alleges that both are "members" of Sand and that Gonzalez "holds himself out as the Managing Member and CEO of U.S. Sand" and that Packineau "holds himself out as an owner of U.S. Sand."   (Compl. ¶¶ 4, 6.)   Sand argues that these allegations fail to adequately allege that Gonzalez and Packineau may be held individually liable for the actions of Sand.

Minnesota uses a two-prong test to determine when a shareholder can be liable for corporate obligations.  The first prong focuses on the shareholder's relationship to the corporation and is analyzed according to several factors, including: (1) whether there is insufficient capitalization for purposes of corporate undertaking, (2) a failure to observe corporate formalities, (3) nonpayment of dividends, (4) insolvency of debtor corporation at time of transaction in question, (5) siphoning of funds by dominant shareholder, (6) nonfunctioning of other officers and directors, (7) absence of corporate records, (8) and existence of the corporation as merely a facade for individual dealings.  *Barton v. Moore*, 558 N.W.2d 746, 749 (Minn. 1997) (citing *Victoria Elevator Co. of Minneapolis v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979)).  The second prong requires a showing that piercing the corporate veil is necessary to avoid injustice or fundamental unfairness.  *Id.*

At the pleading stage, courts in this district have permitted claims against individual corporate defendants to proceed when plaintiffs make basic allegations as to one or more of these factors.  In *MacDonald v. Summit Orthopedics, Ltd.*, 681 F. Supp. 2d 1019 (D. Minn. 2010), the court noted that the plaintiff "presented allegations that, if true, would establish the existence of more than one factor under the first prong of the *Victoria Elevator* test," including that the individual defendants siphoned funds from the corporation, exacerbated its insolvency, "engaged in self dealing by making payments to themselves in preference to the other participants in the Plan."  *Id.* at 1026; *see also Bank of Montreal v. Avalon Capital Grp., Inc.*, 743 F. Supp. 2d 1021, 1031 (D. Minn. 2010) (denying motion to dismiss because it was "too early in the case to dismiss this

claim" where plaintiff alleged that LLC form was abused and was "merely a façade" for individual dealings and that defendant "siphoned funds" out of LLC from which the individual benefited (citing *Ahlm v. Rooney*, 143 N.W.2d 65, 69 n.1 (Minn. 1966) (noting that, even at summary judgment stage, alter ego claims usually should not be disposed of due to the complex issues involved))); *Murrin v. Fischer*, Civ. No. 07-1295, 2008 WL 540857, at *22 (D. Minn. Feb. 25, 2008) (plaintiffs not required to plead *Victoria Elevator* factors at the motion to dismiss stage – only enough to put defendants on notice of the theory of piercing the corporate veil plaintiffs plan to assert – finding allegations that entities "were entirely controlled" by individual defendant and that entities were used to defraud the plaintiffs were sufficient).

In light of these cases, the pleadings here are, although sparse, sufficient.  CHR alleges that Gonzalez and Packineau "used U.S. Sand's corporate entity as a mere shell to secure valuable services from C.H. Robinson and then diverted the proceeds from those services to their own personal use," and "exercised such control over U.S. Sand such that it was their alter ego."  (Compl. ¶¶ 36-37.)  CHR also alleges that "[e]quity requires that the Court disregard the U.S. Sand corporate fiction and hold Defendants Jose Alberto Gonzalez and Mervin Packineau personally liable for all sums U.S. Sand owes to C.H. Robinson."  (*Id.* ¶ 38.)  These allegations point to at least two of the *Victoria Elevator* factors: the siphoning of funds for personal use and the existence of the corporation as merely a façade.  The presence of two factors is not overwhelming, but is sufficient. *See MacDonald*, 681 F. Supp. 2d at 1026 (plaintiff sufficiently pled alter ego where alleged facts showing two *Victoria Elevator* factors).  Given Rule 8's requirement

of merely "a short and plain statement," these allegations suffice.  Fed. R. Civ. P. 8(a)(2).

The Court will therefore deny Sand's motion to dismiss individual defendants Gonzalez

and Packineau from the suit.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that defendants' Motion to Dismiss [Docket No. 12] is **DENIED**

**in part** and **GRANTED in part** as follows.

1.      The motion is **GRANTED** with respect to Count II for the breach of the

duty of good faith and fair dealing.  That claim is **DISMISSED without prejudice**.

2.      The motion is **DENIED** with respect to all other claims.

DATED:  January 8, 2014                                       _____
at Minneapolis, Minnesota.                                    s/ John R. Tunheim
                                                                           JOHN R. TUNHEIM
                                                                 United States District Judge